Green, J.,
delivered tho opinion of the court.
This is an action of trover, brought by Sullivan for certain *508 property which Woods, as executor of Uriah Stone, has taken into his possession, and which Sullivan claims as owner, by virtue of his marriage with the widow of said Stone.
Uriah Stone, by his last will, gave to his wife, Polly Stone,•considerable property, consisting of land, negroes, furniture, horses, cows, hogs and sheep, wagon, and plantation tools: — - ■“The above mentioned ’property,” he says, “is only to belong to my wife, Polly Stone, during her lifetime or widowhood. Now, if in case my wife, Polly Stone, should marry, I allow all the above named property to be entirely under the control of my executors, for the use and benefit of my wife whilst she may live.”
The testator then makes a disposition of the property in a’emaind-er, — directing that at his wife’s death, it shall all be sold, except the land and negroes.
Sullivan, the plaintiff below, married the widow, and the property in controversy consists of the produce of the crops •made on the farm, and the increase of the mares, cows, and hogs, &c., during the lifetime of his wife. The tenant for life having died, the executor of Stone has taken possession of this property, as part of Stone’s estate, and Sullivan prosecuted this action to recover its value.
A verdict and judgment were obtained for the plaintiff below, and the defendant appeals in error to this court.
1. It is insisted, that the wife of the plaintiff had a separate estate in the property given her by the will of her former husband; and that no title vested in the piaintiff by the marriage.
The gift, it is argued, to the wife, during life or widowhood; vesting in her the unqualified control of the property if she should not marry, and if she should marry, committing it to the entire control of his executors, for her use aud benefit, distinctly indicate the intention of the testator, that in the event *509 of her marriage, his wife was to hold the property to her sole and separate use.
It may be possible that such an intention was in the mind of the testator; but we do hot think the language employed in the will, conveys such meaning.
This provision is nothing more than the interposition of a •trustee, the better to guard the property from waste, and to preserve it for those in remainder. There is nothing said about her separate control over it; or that it shall be exempt from the control of a future husband, — but the words are, “to be entirely under the control of my executors, for the use and benefit of my wife whilst she may live.”
Now, the stipulation, that the property, in the event of marriage, should be “entirely under the control of the executors,” has no effect on the marital right of the husband, to such interest as was vested in the legatee. It only changes the right, from a legal to an equitable one, by interposing a trustee. Nor do the words, “for the use and benefit of my wife” — create a separate estate.
It is certainly true, that the words, “sole and separate.use,” need not be used — but any other words, showing the intention of the testator to create a separate estate, will have that effect, and the intention of the donor will be effectuated by the court. But it is believed, that in no case, except, perhaps, in South Carolina, has a mere gift to a feme covert, been held to be evidence of such intention.
Neither the case of Hamilton vs. Fly, 8 Yerg.; nor Beaufort vs. Collins, 6 Humph., support the present, asa gift to the separate use. In the case of Maberry vs. Neely, 5 Humph. 337, and Thompson vs. McKissick, 3 Humph. 331, this court has held, that if a gift be “for the use and benefit of a wife,” without words importing, the sole and separate use,the marital right is not barred. The interposition of a trustee, say the court, in Maberry vs. Neely, makes no difference. In such case, the *510 husband is vested with such title, as his wife had to the estate.
2. We next enquire what were the rights of the husband to the accessions, as the produce of the farm, horses, cattle, &c.
In general, where perishable property is given to one for H e, and remainder to another, it is the duty of the executor, to sell the estate, and vest the fund; the interest of which, only, will belong to the person entitled to the life estate, and when that shall fall, the entire fund is to go to the remainder-man. And if the executor shall fail to do this, and the estate shall perish during the life, he will be responsible to the re-mainderman. But where the will, indicates the intention of the testator, that the tenant for life should enjoy the property in specie, — no such sale can be made, — and the remainder-man is entitled only to such part of the property, originally given, as may remain after the life shall fall. If the tenant for life have wasted, or converted any part of the chattels, his estate will be liable for the amount so wasted or converted. But if it be consumed in the use intended to be made of it, or perish by time, or death of animals, or wear and tear of furniture and farming tools, the rights of the remainderman are defeated, and he is entitled to nothing, except what may remain of the original stock. The accessions — crops, young animals, the offspring of those originally given, new furniture, tools, &c., constructed by the labor of the property given, all belong to the owner of the particular estate.
In the present case, the will clearly indicates the intention of the testator, that the property given should be enjoyed in specie by his wife. All the accessions, are, therefore, the property of the plaintiff below.
There is no error in the record and we affirm the judgment.